575 So.2d 1005 (1990)
MASSACHUSETTS MUTUAL LIFE INSURANCE CO.
v.
William E. COLLINS.
88-949.
Supreme Court of Alabama.
July 20, 1990.
*1006 Charles D. Stewart and Betsy P. Collins of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for appellant.
William H. Atkinson, John H. Bentley and William Todd Atkinson of Fite, Davis, Atkinson and Bentley, Hamilton, for appellee.
PER CURIAM.
The plaintiff, Eddie Collins, sued Massachusetts Mutual Life Insurance Company for fraud, conspiracy to defraud, outrage, and fraudulent representations, all arising from the sale of an insurance policy. The jury returned a $750,000 verdict in favor of Collins; the trial court entered a judgment based on that verdict; and Massachusetts Mutual appeals.

FACTS
Eddie Collins obtained a $15,000 whole life policy from Massachusetts Mutual in 1967, when he was 19 years old (policy # 1). He timely paid the monthly premium of $19.51 over the years. In May 1983, Collins was approached by a Massachusetts Mutual agent, Tom Smart, regarding the purchase of additional life insurance. Policy # 1 had an accumulated cash value of between $1,500 and $1,800 at that time.
Smart sent Collins a letter on May 9, outlining the proposed "update" program formulated by Smart for Collins (policy # 2). This "update" program proposed that Collins purchase additional coverage in the amount of $85,000, increasing his total coverage to $100,000. The $1,307.55 annual premium for policy # 2 was to be paid out of the dividends from policy # 1 and policy # 2 as well as out of loans drawn against the cash value of policy # 1. Collins contends that he was unaware that the accumulated cash value of policy # 1 would be used to fund policy # 2. This fact is the heart of the alleged fraud. In his letter, Smart represented to Collins that no additional premiums would be needed to fund policy # 2.
Smart met Collins for lunch at some point after the May 9 letter had been *1007 mailed. Collins brought along as an advisor Zadus Turner, an independent insurance agent who was an old friend of Collins. At this luncheon meeting, Smart produced spread sheets outlining the payment schedule for policy # 2. Collins decided to purchase the additional coverage.
In June 1984, Collins received a bill for the premium on the new policy. Collins contacted Smart because, he says, he had thought that he would not need to make additional premium payments on policy # 2. Smart sent Collins a form on June 18 that was captioned "Loan Certificate." Along with the form, Smart included a letter that stated that policy # 1 was being "leveraged" to cover the premium for policy # 2 and that "we are merely leveraging against future dividends." Collins completed the "Loan Certificate" and returned it to Massachusetts Mutual. This entire procedure was repeated in 1985. Massachusetts Mutual agent Smart died shortly after the form was returned in 1985.
Upon receiving a bill for the premium on policy # 2 in June 1986, Collins contacted a representative of Massachusetts Mutual, who explained that policy # 2 was being funded by a series of loans against the cash value of policy # 1. Collins sued Massachusetts Mutual.
Massachusetts Mutual makes several allegations of error.

I
Massachusetts Mutual argues that Collins's action was barred by the two-year statute of limitations. Code of Ala. 1975, § 6-2-3, provides:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
Massachusetts Mutual contends that Collins knew or should have discovered the underlying facts constituting the alleged fraud at the time that the first loan certificate was issued in June 1984, over two years before suit was filed. It argues that Collins signed a form captioned "Loan Certificate," that the loan certificate was unambiguous, and that the word "loan" appeared 11 times in the document. Massachusetts Mutual contends that by virtue of having executed the loan certificate Collins was put on notice as early as June 1984 that the cash value of policy # 1 was being used as collateral to finance policy # 2.
Facts constituting fraud are considered discovered when they actually have been discovered or when they should have been discovered. Gonzales v. U-J Chevrolet Co., 451 So.2d 244 (Ala.1984). It is ordinarily a jury question whether a party discovered or should have discovered a fraud earlier than the date claimed.[1]Ratledge v. H & W, Inc., 435 So.2d 7 (Ala. 1983).
Collins contends that he was misled by Smart into believing that the loan certificate applied only to the dividends. Collins testified that Smart repeatedly assured him that only dividends were leveraged, and that dividend leveraging was referred to in the May 9 letter from Smart to Collins.
In view of these facts, we believe that Collins presented at least a scintilla of evidence that he did not have notice of the fraud in June 1984. Therefore, the question of the time at which Collins should have discovered the fraud was properly before the jury.

II
Massachusetts Mutual argues that Collins was improperly allowed to introduce into evidence a letter from Smart to a third party. The letter was sent by Smart to Bill Fishburne, who was advising his law partner, Charles Sharp, regarding the purchase of life insurance. Smart was attempting to *1008 sell to Sharp a plan similar to the one he had sold to Collins. Although the letter used no names, Smart related the details of a plan that had been sold to another person. This other person was described as a 35-year old male non-smoker, with an existing $15,000 policy purchased by him at age 19 for a monthly premium of $19.51. The letter also stated that this person had purchased $85,000 of additional coverage. An employee of Massachusetts Mutual acknowledged that Collins was the only one of Smart's customers who fit the profile described in the letter.
The letter went on to describe the "dividend averaging" concept as well as the "dividend leveraging" concept at issue here. Massachusetts Mutual argues that the letter was irrelevant because it was sent to a third party. We cannot agree. Under the particular facts of this case, we believe that there was evidence presented from which the trial court could have determined that the letter was relevant. Not only did the profile match Collins perfectly, but also a Massachusetts Mutual employee acknowledged that Collins was the only one of Smart's customers who matched the profile. "Questions of materiality, relevancy, and remoteness rest largely with the trial judge, and his rulings must not be disturbed unless his discretion has been grossly abused." Ryan v. Acuff, 435 So.2d 1244, 1250 (Ala.1983).
We hold that the trial judge did not abuse his discretion in admitting the letter.

III
Massachusetts Mutual also argues that the trial court erred in allowing Sharp to testify concerning his transactions with Smart. Massachusetts Mutual first argues that Sharp's testimony is barred by the Dead Man's Statute. We disagree. In order for the Dead Man's Statute to apply and render a witness's testimony incompetent, four criteria must be met: (1) The testimony must concern a statement by or a transaction with a deceased person; (2) the estate of this deceased person must be affected by the outcome of the suit, or the deceased person must have acted in a representative relation with the party against whom such testimony is to be introduced; (3) the witness must have a pecuniary interest in the result of the suit; and (4) the interest of the witness must be opposed to the interest of the party against whom he is called to testify. See Melvin v. Parker, 472 So.2d 1024 (Ala.1985); Stanley v. Hayes, 276 Ala. 532, 165 So.2d 84 (1964); Ala.Code 1975, § 12-21-163.
Clearly, Sharp's testimony meets criteria (1), (2), and (4). Sharp testified as to statements made by a deceased person. Sharp's testimony was used against a party represented by the deceased, and Sharp's interest is opposed to that of Massachusetts Mutual as evidenced by a separate lawsuit filed by Sharp against Massachusetts Mutual. Criterion (3) is more problematic. Massachusetts Mutual argues that because a similar lawsuit filed by Sharp against Massachusetts Mutual was pending at the time of trial, Sharp had a pecuniary interest in the outcome of this suit. In order for a pecuniary interest to bar testimony, it must be present, certain, and vested, not uncertain, remote, or contingent. City of Rainbow City v. Ramsey, 417 So.2d 172 (Ala.1982).
Massachusetts Mutual argues that because Sharp's case is pending in the same county, because the same attorneys are representing the parties, and because the case potentially will involve the same judge and witnesses, he has a direct pecuniary interest in the outcome of Collins's case. While we agree that the outcome of Collins's case may have an impact on Sharp's case, we cannot say that such a potential impact is present, certain, and vested. Sharp, therefore, does not have a direct pecuniary interest in the present case that would act to bar his testimony.
Massachusetts Mutual also contends that Sharp's testimony should not have been allowed because his transactions with Smart were significantly dissimilar from Collins's transactions with Smart. In order to admit other false representations in a fraud case, the other representations must be similar in nature to those alleged in the complaint, Sessions Co. v. Turner, *1009 493 So.2d 1387 (Ala.1986), and the transaction must be of substantially the same character, Great American Ins. Co. v. Dover, 221 Ala. 612, 130 So. 335 (1930). In the present case, Sharp had eight Massachusetts Mutual Life insurance policies with a total face value of $131,000. Sharp's policies were not unencumbered: he had several loans outstanding against their value at the time he was approached by Smart. Sharp also testified that his secretary handled most of the details of the transactions. Massachusetts Mutual argues that these differences between Sharp's situation and Collins's disqualify Sharp from testifying. Collins points out that both Collins and Sharp had been longtime Massachusetts Mutual policyholders and had significant accrued cash values. Both were approached in 1983 by Smart and were sold "update" programs based upon a "stream of dividends." Both were told that they would receive additional insurance with no increase in their monthly premium, and both were shown income projections which later turned out to be false. Based upon this evidence, the trial court did not err in finding that Collins's and Sharp's transactions with Smart were substantially of the same character so as to allow Sharp's testimony. We find no error here.

IV
Massachusetts Mutual also argues that the trial court erred in refusing to admit the May 9 letter from Smart to Collins soliciting his business. Collins's objection to the introduction of the letter was based upon the Dead Man's Statute. Massachusetts Mutual argues, and we agree, that Collins was not in a position to assert the Dead Man's Statute. The Dead Man's Statute provides protection to the decedent's estate or its successors.
The Dead Man's Statute provides:
"In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another."
§ 12-21-163 (emphasis added).
Although the wording of this section is not completely clear, it is clear enough that the statute is meant to protect the interests of the decedent from the testimony of the living concerning transactions that occurred between the deceased and the witness. In this case, the party, who for all intents and purposes represents the interests of the decedent, seeks to introduce a letter from the deceased to the opposing party.
"The purpose [of the Dead Man's Statute] is to prevent the surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, his representative is deprived of the decedent's version of the transaction or statement."
81 Am.Jur.2d Witnesses § 304 (1976).
Clearly, Collins cannot exclude the letter under the provisions of the Dead Man's Statute; therefore, the trial judge erred in refusing to allow the letter.
While it was error for the trial judge to exclude the letter from evidence, we do not believe that such error requires reversal. The illustrations attached to the letter were the same illustrations attached to the Sharp letter which was properly *1010 introduced into evidence. The text of the letter illustrated both dividend averaging and dividend leveraging. Concerning dividend averaging, the letter stated:
"When a net premium is due, paid additions are surrendered to pay it. This reduces the value of your paid additions account. When dividends exceed the annual premium of your new coverage, this increases the value of your paid additions account." (Emphasis in original.)
Concerning dividend averaging, the letter provided:
"When the cash value of paid additions is all used, you would then leverage current premium payments against future dividends by borrowing against policy guaranteed values. This, of course, would involve policy loans and loan interest. However, under dividend leveraging, the loan interest is not paidyou are still paying your same $19.51 a month. When the future dividends exceed the annual premium cost, the excess pays off the loan for you. You end up with greater coverage, greater cash value, and greater dividend income." (Emphasis in original.)
As discussed in part I, it is clear that the jury believed that Collins was misled by Smart.
We hold that the error in failing to permit the introduction of the letter was, at most, harmless error. Rule 45, A.R.App.P.

V
Massachusetts Mutual contends that the trial court committed error in allowing Collins's counsel to read from documents not in evidence in formulating his questions. Massachusetts Mutual argues that this type of questioning violated the best evidence rule and, in one instance, the Dead Man's Statute.
After reviewing the questions at issue, we are of the opinion that the questions requested information within each witness's personal knowledge. Such questions do not violate the best evidence rule. Cupps v. Upton, 489 So.2d 544 (Ala.1986).
Massachusetts Mutual also contends that some of the questions asked of Collins violated the Dead Man's Statute. These questions referred to a handwritten note from Smart to Collins that accompanied the loan certificates discussed earlier. Collins claims that Massachusetts Mutual's attorneys, during their cross-examination, opened the door and allowed Collins's attorney to question him on redirect concerning the accompanying note. We agree. The note repeatedly stated that Collins should not be alarmed and that the "game plan [was] intact."
Massachusetts Mutual, by extensively questioning Collins about the loan certificate, opened the door to questions concerning the accompanying note. The Dead Man's Statute is subject to waiver in cases where the deceased party's representative questions a witness concerning his transactions with the deceased. Poston v. Gaddis, 372 So.2d 1099 (Ala.1979). The trial court did not err on this issue.

VI
Lastly, Massachusetts Mutual argues that the award of $750,000 is excessive. Its contention is that the imposition of punitive damages violates the due process rights embodied in the United States Constitution. This Court dismissed, without discussion, a similar claim in Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989). The United States Supreme Court has granted certiorari in that case.
We note that the trial court applied the guidelines found in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and found that the damages award was not excessive. Upon review of the facts of this case, we likewise find that the damage award was not excessive.
Based upon the foregoing, the judgment of the trial judge is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
*1011 HOUSTON, J., concurs specially.
MADDOX, J., concurs in the result.
HOUSTON, Justice (concurring specially).
I concur with the majority opinion.
I have been singing from the hymnal used by Justice Maddox on the need for meaningful standards for jury and trial court assessment, and trial court and appellate review, of punitive damages since I have been a Justice on this Court. The phrase "meaningful standards" does not mean that the amount of punitive damages must be small, but only that the amount should be arrived at as a result of the party against whom such damages are assessed having been afforded procedural due process. The amount of punitive damages must reasonably relate to the wrong and the wrongdoer, or as W.S. Gilbert wrote and retired Justice Samuel A. Beatty did frequently quote:
"To let the punishment fit the crime
"The punishment fit the crime; ..."
The Mikado (1885).
MADDOX, Justice (concurring in the result).
I concur in the result reached, but I continue to adhere to the view I expressed in a dissent in Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), that the United States Supreme Court will hold, on review of that case, that Alabama's scheme for the award of punitive damages fails to guarantee to defendants the "fundamental fairness" that the Constitution requires.
For over a decade I have questioned the process that this Court has used to award punitive damages in cases involving claims such as the one presented in this case, and I have suggested that the legislatureor this Courtshould consider alternatives to an action against an insurance company for fraud or bad faith failure to pay a claim.
The award of $750,000 in this case, while three times more than the "cap" set in the so-called tort reform legislation (which does not apply in this case), is not substantially different from awards made in similar cases. It is on that basis that I concur in the result. Until the Supreme Court of the United States decides the "due process" question that is presented in Pacific Mutual, I will not know whether my prediction about the outcome of that case will be proven accurate. In the meantime, I see no useful purpose to be served by continuing to dissent when the bench and bar are duty bound to apply the law as expressed by a majority of this Court. Because of that, I concur in the result.
NOTES
[1] We note that this case was filed on October 3, 1986; therefore, the "scintilla rule" of evidence applies. "[T]he scintilla rule requires that issues in civil cases must go to the jury if the evidence, or a reasonable inference therefrom, furnishes a glimmer or trace in support of an issue." Alabama Farm Bureau Mut. Cas. Ins. Co. v. Haynes, 497 So.2d 82, 85 (Ala.1986).