This opinion addresses three separate actions against Connecticut Mutual Life Insurance Company. John S. Kelly and Mark Will appeal from summary judgments in favor of Connecticut Mutual in their separate actions; and Michael P. Kilcullen appeals from a summary judgment in favor of Connecticut Mutual and H. Brantley Sanders. We affirm all three judgments.
 "A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. In determining the existence or absence of a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. However, this Court's reasoning is not limited to that applied by the trial court.
 "Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to *Page 456 
the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of material fact. Because this action was filed after June 11, 1987, the nonmovant must meet this burden by 'substantial evidence.' Under the substantial evidence test, the nonmovant must present 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
Chatham v. CSX Transportation, Inc., 613 So.2d 341, 343 (Ala. 1993) (quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989) (citations omitted)).
 FACTS
The facts of each of the three cases are similar. The evidence reveals the following: William G. Nixon, an agent of Connecticut Mutual, sold new insurance policies to each of the plaintiffs in 1987. Each plaintiff had an existing policy with Connecticut Mutual at that time, and Nixon told each plaintiff that he could purchase additional life insurance without additional out-of-pocket expense for each new policy because the premium on the new policy would be paid by the annual dividends on the old policy. Each plaintiff signed a form agreeing to apply "dividend additions" from his old policy to pay the premiums due on the new policy.[1] Thereafter, Connecticut Mutual issued the new policies to the plaintiffs.
Kelly received a notice from Connecticut Mutual in March 1988 informing him that a premium of over $1500 was due on his new policy. Kelly contacted Nixon, who told him that this was just a formality and that he would need to fill out some forms for Connecticut Mutual's district office in Birmingham. Kelly received from the Birmingham office two forms enclosed in a letter dated May 25, 1988. The letter informed him that dividends credited to his old policy had been used to pay the 1988 annual premium on his new policy. The letter also stated, "In the future, forms will be sent to you for your signature, authorizing the use of dividends and/or cash value in [your old policy] to pay the net annual premium on [the new policy]." Kelly, C.R. 222. In April 1989, Kelly received a notice from Connecticut Mutual telling him that another premium was due on his new policy. Kelly contacted Brant Sanders, the branch manager of Connecticut Mutual's Birmingham office, and told Sanders that he had had the impression that the premiums on his new policy were to be paid by the dividends from his old policy. Kelly understood Sanders's reply to mean that his impression was correct. After this telephone conversation with Sanders, Kelly received from Connecticut Mutual a letter dated April 20, 1989, containing two forms. The letter told Kelly that the forms would allow Connecticut Mutual to "use dividends and cash value from [his old policy] to pay the premium due on [his new policy]." Kelly, C.R. 262. Kelly signed and returned the forms, which authorized the surrender of $790 in "dividend additions" from his old policy and a loan of $721.25 against his old policy, the proceeds from which were to be applied to pay the 1989 premium on his new policy. Kelly testified that he understood from his earlier conversations with Sanders and Nixon that the forms were a formality that would allow the premiums on his new policy to be paid solely by the annual dividends from his old policy.
Kelly sued Connecticut Mutual and Nixon on May 9, 1991. He alleged, among other things, fraud arising out of Connecticut Mutual's use of a part of the accumulated value of his old policy in order to fund the premiums on his new policy, when, contrary to Nixon's representations that the new policy would involve no out-of-pocket expenses, the dividends and accumulated value in his old policy were, in fact, insufficient to continue to fund the new policy, Nixon filed for bankruptcy, *Page 457 
and the trial court dismissed with prejudice Kelly's claims against Nixon after his discharge in bankruptcy. Kelly later amended his complaint to include a claim for conversion. Connecticut Mutual moved for a summary judgment. The trial court, after a hearing and after considering the motions and materials submitted by both parties, entered a summary judgment for Connecticut Mutual. Kelly appeals the summary judgment against his fraud and conversion claims.
Will had no contact with Nixon after he bought the 1987 policy and executed a dividend surrender form authorizing the use of $720.75 from the dividend additions on his old policy to fund the initial premium on his new 1987 policy. Will did not respond to later notices concerning amounts due of over $700 on the new policy because, he said, "[i]t was supposed to be paid for." Will, C.R. 146. Will received a letter dated July 22, 1988, from Connecticut Mutual stating that his 1987 policy had been terminated on May 15, 1988.[2] The letter indicated that "[p]rior to this date, the policy had become an Extended Term Insurance Policy per its provisions because the premium due had not been paid." Will, C.R. 179. Will did not call the toll free telephone number listed on this letter, but he did call a number for a Connecticut Mutual agent in Nashville that was on some of the notices he had received, and he left a message; the call was never returned. Will also called the Birmingham office of Connecticut Mutual, but no one answered the telephone.
Will sued Connecticut Mutual and Nixon on May 9, 1991. He alleged, among other things, fraud arising out of Connecticut Mutual's alleged use of a part of the accumulated value of his old policy in order to fund the premiums on his new policy, when, contrary to Nixon's representations that the new policy would involve no out-of-pocket expenses, the dividends and accumulated value in his old policy would be insufficient to continue to fund the new policy. Nixon filed for bankruptcy, and the trial court dismissed with prejudice Will's claims against Nixon after his discharge in bankruptcy. Will later amended his complaint to include a claim for conversion. Connecticut Mutual moved for a summary judgment. After a hearing, and after considering the motions and materials submitted by both parties, the trial court entered a summary judgment for Connecticut Mutual. Will appeals the summary judgment against his fraud and conversion claims.
Kilcullen began to receive premium notices on his 1987 policy from Connecticut Mutual in 1988. He was unable to contact Nixon, who no longer worked for Connecticut Mutual. He received a notice, dated July 19, 1988, indicating there were insufficient funds available to complete the payment on the 1988 premium for his 1987 policy, and that the policy had lapsed but could be reinstated. Then Kilcullen received a letter dated August 20, 1988, informing him that his 1987 policy had lapsed on June 20, 1988, and indicating that "[p]rior to this date, the policy had become an Extended Term Insurance Policy per its provisions because the premium due had not been paid." Kilcullen, C.R. 111. He called the toll-free number on the letter and reached Brant Sanders, Connecticut Mutual's district manager in Birmingham. Kilcullen told Sanders that he did not owe Connecticut Mutual for the premium, that "[i]t was totally misrepresented to me," and that he was assured that he "would not have to make any premiums on the policy." Kilcullen, C.R. 271. Sanders told Kilcullen that Connecticut Mutual knew it had a problem with its agent, Nixon, in Mobile, and that he or Connecticut Mutual would "straighten everything out." Kilcullen, C.R. 271-72. Sometime between August 1988 and August 1989, Kilcullen spoke with Bill Orrell, the Connecticut Mutual agent that had sold him his original life insurance policy in 1971. Kilcullen told Orrell that he had lost over $500 in dividends from the policy Orrell had sold him because another agent had sold him a later policy, and that he felt he had been "flimflammed." Kilcullen, C.R. 309, 315. Shortly thereafter, Kilcullen spoke with Orrell at Orrell's office. Orrell told him that there were not enough dividends in his original and 1987 policies combined to cover the *Page 458 
$548 annual premium on the new policy over the long run, and that Kilcullen had "gotten stuck" and had lost the money from the dividends in his old policy. Kilcullen, C.R. 317. Kilcullen received no further communication from Connecticut Mutual until he was sent two sets of audit letters on his policies in 1991. Kilcullen responded to the second set of audit letters, and on the audit form indicating that his 1987 policy had been changed to extended term insurance before it had expired, he wrote "This policy was misrepresented to me by an agent which no longer works for Connecticut Mutual. All Connecticut Mutual did was rob my subscriber account funds." Kilcullen, C.R. 114. Kilcullen testified that this statement was meant as a request for Connecticut Mutual to contact him about the status of his 1987 policy.
Kilcullen sued Connecticut Mutual and Sanders on January 10, 1992, alleging, among other things, fraud and suppression of material facts arising out of Nixon's representations to him that had induced him to buy an additional insurance policy when, contrary to Nixon's representations, the dividends from Kilcullen's old policy were insufficient to fund the new policy. Kilcullen later amended his complaint to add a claim for conversion. The trial court granted the defendants' motion for a summary judgment, ruling that all of Kilcullen's claims were barred by the applicable statute of limitations. Kilcullen appeals the summary judgment against his fraud, suppression, and conversion claims.
 FRAUD
"A fraud action is subject to the two-year statute of limitations of Ala. Code 1975, § 6-2-38(l), but the two-year period does not begin to run until the plaintiff has discovered, or should have discovered, the fraud. See § 6-2-3."Howard v. Mutual Sav. Life Ins. Co., 608 So.2d 379, 381 (Ala. 1992). "The question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury." Vandegrift v. Lagrone, 477 So.2d 292, 295 (Ala. 1985). However, there are times when this question is removed from the purview of the jury. "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as as matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." Hicks v. Globe Life Acc. Ins. Co., 584 So.2d 458, 463 (Ala. 1991) (emphasis original). As a corollary to this rule, "[w]e have held that fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered." Hickox v. Stover, 551 So.2d 259, 262 (Ala. 1989). However, the reasoning in Hickox implies that documents that are vague or that do not reasonably indicate that a fraud has occurred, based on the circumstances of each case, will not "warrant a finding that the fraud claim is barred as a matterof law." Id. (emphasis original).
In each of the three cases before us, the trial judge entered a summary judgment for Connecticut Mutual.[3] In each case, Connecticut Mutual made a prima facie showing that there was no genuine issue of material fact. In each case, the plaintiff, more than two years before filing his action, received notice that a premium was due on the 1987 policy, although Nixon had informed each plaintiff that no additional premiums would be due because the dividends on the old policy would cover the premiums on the new one. Thus, the burden shifted to each plaintiff, as nonmovant, to produce substantial evidence creating a genuine issue of material fact or indicating that Connecticut Mutual was not entitled to a judgment as a matter of law. Ala. Code 1975 § 12-21-12; Rule 56(c), Ala.R.Civ.P.; Howard, supra, at 381.
The trial judge in each of the three cases (three separate judges) determined, as a matter of law, that Connecticut Mutual was entitled to a judgment on the fraud claims because the two-year statutory period of limitations had run on each claim. Taking each plaintiff's evidence in the light most favorable to him, we must consider whether he "presented evidence on which reasonable persons could disagree as to when [he] had, or should *Page 459 
have had, actual knowledge of the alleged fraud."Howard, supra, at 381.
In 1988, Will received notices that premiums were due on his 1987 policy. He received a letter stating that his policy had been terminated for failure to pay these premiums. Nixon had informed Will that he would have no out-of-pocket expenses because his dividends from his old policy would cover the premiums. The notices and letter that Will received in 1988 were not vague; they directly contradicted Nixon's representations to him concerning the payment of premiums on the 1987 policy. Will's unsuccessful telephone calls to Connecticut Mutual after receiving the notice of policy termination reinforce our conclusion that Will "actually knew
of facts that would have put a reasonable person on notice of fraud." Hicks, supra, 584 So.2d at 463 (emphasis original). Therefore, we affirm the trial court's summary judgment as to Will's fraud claim.
Kelly and Kilcullen contend that they made inquiries to Connecticut Mutual about the status of their policies after receiving "premium due" statements on them in 1988, and that Connecticut Mutual misrepresented to them that everything would be straightened out and implied that their existing dividends would indeed pay for the premiums on the 1987 policies. They cite Howard v. Mutual Sav. Life Ins. Co., supra, and Massachusetts Mutual Life Ins. Co. v. Collins,575 So.2d 1005 (Ala. 1990), cert. denied, 499 U.S. 918, 111 S.Ct. 1306,113 L.Ed.2d 240 (1991), for the proposition that, once a plaintiff has learned of facts that would put a reasonable person on notice of fraud, if that plaintiff then makes an inquiry concerning the purported fraud and is misinformed or falsely informed by the defendant, so that the plaintiff justifiably relies on the defendant's misrepresentation and his fears of fraud are thereby allayed, then the running of the limitations period is still tolled as to the fraud claim. SeeHoward, supra, 608 So.2d at 383; Collins, supra, 575 So.2d at 1007. In other words, if the plaintiff presents evidence that he was deceived by the defendant as to his claim of fraud, then, if the facts of the case so indicate, "[t]he question of whether [he] justifiably relied on the insurer's representations as to the policy coverage cannot be resolved as a matter of law," and is a question for the jury. Howard, supra, at 383. Although Kelly and Kilcullen's interpretation of the law in Howard and Collins is correct, the facts of their individual cases prevent its application.
Kelly spoke with Nixon and Sanders after he received notice that premiums were due on his 1987 policy. Nixon had informed him that the forms he had to fill out were just a formality. Kelly had understood Sanders's reply to his inquiry to mean that his new policy premiums would be paid entirely by his old policy dividends. Even if Kelly was justified in relying on this representation, after his conversation with Sanders he received a letter, dated April 20, 1989, which indicated he would have to use "dividends and cash value" from his old policy to pay the premium on his new policy (emphasis added). The forms he signed in April 1989 and returned to Connecticut Mutual authorized a loan against his old policy to pay part of the premium on his new policy. The language of the letter was not vague; it clearly stated that execution of the form, which was entitled "Request for Policy Loan," would enable Connecticut Mutual to use the cash value from Kelly's old policy to pay part of the premium on his new policy. The trial court did not err in concluding that Kelly's execution of the form authorizing Connecticut Mutual to pay the premium on one policy through a loan against the other policy demonstrated that Kelly "actually knew of facts that would have put a reasonable person on notice of fraud" more than two years before he filed his complaint, and that, therefore, as a matter of law, Kelly's fraud claim was barred by the statute of limitations. Kelly, C.R. 422. Therefore, we affirm the summary judgment as to Kelly's fraud claim.
Kilcullen spoke with Sanders in 1988, after he had received notices that premiums were due on his 1987 policy and after he had received a letter informing him that his policy had been terminated for failure to pay these premiums. The premium notices and letter were not vague, and they directly contradicted Nixon's earlier representations that *Page 460 
Kilcullen's premiums would be paid entirely from dividends on his old policy. Therefore, Kilcullen was given actual notice of the potential fraud before he contacted Sanders. We need not address whether Kilcullen justifiably relied on Sanders's representations that he would straighten everything out, and, thus, whether Kilcullen was deceived as to the fraud after his inquiry, because the facts of his later discussions with Orrell clearly indicate that Kilcullen had actual notice "of facts that would have put a reasonable person on notice of fraud" before August 1989, which was more than two years before he filed his complaint against Connecticut Mutual and Sanders. Therefore, we affirm the summary judgment as to Kilcullen's fraud claim.
Kilcullen also argues that the summary judgment was improper as to his suppression claim. However, a claim of suppression of a material fact, like a claim of fraudulent representation, is a fraud claim and is subject to the two-year statute of limitations, which begins to run when the plaintiff discovers, or should have discovered, the fraud.Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602, 604 (Ala. 1987); Howard, supra, 608 So.2d at 381; Ala. Code 1975, §§6-2-3, 6-2-38(l), 6-5-101, 6-5-102. Thus, for the reasons stated above, we affirm the summary judgment as to Kilcullen's suppression claim.
All three plaintiffs contend that Massachusetts Mutual Ins.Co. v. Collins, supra, 575 So.2d 1005, demonstrates that a jury question exists concerning their reliance on the statements of Nixon and Sanders. Admittedly, the facts in Collins are remarkably similar to those in these three cases. However, inCollins we affirmed a judgment based on a jury verdict, based on the old "scintilla rule"; under that rule an issue went before the jury " 'if the evidence, or a reasonable inference therefrom, furnishe[d] a glimmer or trace in support of an issue.' " Collins, supra, at 1007, n. 1 (quoting AlabamaFarm Bureau Mut. Cas. Ins. Co. v. Haynes, 497 So.2d 82, 85
(Ala. 1986)). Here, we do not have the presumption of correctness that is given to a jury verdict, as we had inCollins, and the plaintiffs must prove their case by "substantial evidence." § 12-21-12. Under the substantial evidence standard of review that we must apply to these appeals, we must conclude, as indicated above, that the summary judgments were proper as to the plaintiffs' fraud claims.
 CONVERSION
The plaintiffs also contend that the trial courts erred in entering the summary judgments as to their conversion claims. We must, therefore, determine if the summary judgment was proper as to each conversion claim.
To support a claim for conversion, a plaintiff must prove "(1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property, or (4) a wrongful detention or interference with another's property." Gillis v. Benefit Trust Life Ins. Co.,601 So.2d 951, 952 (Ala. 1992).
In entering the summary judgments against Kelly and Kilcullen, the courts relied on Tyler v. Equitable LifeAssurance Society of the United States, 512 So.2d 55 (Ala. 1987), concluding that the facts of each case involved a valid offer and an acceptance by the plaintiff and thus precluded any claim of conversion.
In Tyler, the plaintiffs agreed to pay a penalty for prepayment of a mortgage, and then, after paying the penalty, they sued Equitable, asserting, among their causes of action, a conversion claim. We held that when the Tylers accepted the offer to pay a penalty in order to prepay their mortgage, there was a valid offer and acceptance concerning the money in question in the conversion claim. Because "the money in question was paid as part of a valid offer and acceptance, there was not a wrongful taking, a wrongful detention, an illegal assumption of ownership, or an illegal use or misuse by Equitable." Tyler, supra, at 57.
All three plaintiffs contend that Connecticut Mutual converted the funds taken from their old policies to pay the premiums on their 1987 policies, because, they argue, there was no valid offer and acceptance whereby they agreed to allow Connecticut Mutual to apply those funds to their new *Page 461 
premiums. Connecticut Mutual contends that these plaintiffs agreed to pay the premiums on their 1987 policies with funds from their old policies, and that, because there was a valid offer and acceptance in each instance, there was no wrongful or illegal action by Connecticut Mutual that would allow a conversion claim.
The record shows that Kelly agreed to surrender dividends from his old policy to pay the premiums on his new policy in 1987, 1988, and 1989 and that he agreed to allow Connecticut Mutual to pay part of the 1989 premium on his new policy through a loan against the cash value of his old policy. The record shows a valid offer and acceptance. Therefore, the trial court properly entered the summary judgment against Kelly's conversion claim.
The record shows that Will agreed to surrender dividends from his old policy to pay the first year's premium on his 1987 policy, that there was no other payment on the policy after 1987, and that the policy was terminated without any additional premium payments being made. The record shows a valid offer and acceptance. Therefore, the trial court properly entered the summary judgment against Will's conversion claim.
In its summary judgment against Kilcullen the court concluded that "all claims are barred by the applicable statute of limitations." Kilcullen, C.R. at 877. However, Connecticut Mutual agrees with Kilcullen that the court erred in its reasoning, because the applicable limitations period for conversion claims is six years, § 6-2-34, and the claim was filed within the six-year period. Connecticut Mutual argues, however, that the summary judgment was correct as to the conversion claim, under the rationale of Tyler, supra, 512 So.2d at 57, and that, under Alabama law, a correct judgment will not be disturbed on appeal, even if the trial court gives the wrong reasons for its judgment. Boykin v. Magnolia Bay,Inc., 570 So.2d 639, 642 (Ala. 1990).
The record shows that Kilcullen agreed to surrender dividends from his old policy to pay the first year's premium on his 1987 policy, that there was no other payment on the policy after 1987, and that the policy was terminated without any additional premium payments being made. Because there was a valid offer and acceptance, we hold, based on the reasoning above and on Tyler, 512 So.2d at 57, that the trial court properly entered a summary judgment against Kilcullen on his conversion claim. Boykin, supra, at 642.
AFFIRMED.
HORNSBY, C.J., and MADDOX and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
[1] Each plaintiff signed a "Request to Pay Dividends and Change Dividend Option" form wherein he agreed to "SURRENDER DIVIDEND ADDITIONS (less any loan indebtedness) in the face amount of [the annual premium due on the new policy]." Thus, the premiums on the new policy were to be paid from "dividend additions" on the old policy. Nowhere on the form did it indicate whether these dividend additions were restricted to forthcoming annual dividends, or whether they included the accumulated dividends from earlier annual dividends which had already been added to the cash value of the policy. Apparently, the form only authorized application of dividends from the old policy to the current year's premium on the new policy.
[2] Will's annual policy report, dated May 20, 1988, on his old policy showed a dividend of $377.56. Nothing in the record indicates that Will was asked after 1987 to apply the dividends from his old policy against the premiums for his new policy.
[3] We note that each case was assigned to a different judge.