L. CHARLES WRIGHT, Retired Appellate Judge.
The Hendrixes (appellants) filed an action against Charles Kelley and Mega Life and Health Insurance Company, alleging breach of contract, misrepresentation/fraud, misrepresentation/twisting, and negligence or wanton hiring and supervision. Mega and Kelley filed a motion for a summary judgment. The *74 appellants acquiesced to a summary judgment on the breach of contract claim and on the negligence or wanton hiring and supervision claim. The trial court entered a summary judgment in favor of Mega and Kelley on the fraud claims, finding that the claims were barred by the statute of limitations. This case is before us pursuant to § 12-2-7(6), Code 1975.
The record reflects that on March 20,1991, the appellants applied for a health insurance policy, to be issued by Mega. The appellants testified in deposition that Kelley, Mega’s agent, told them that the Mega policy, which would replace their existing World Insurance policy at a lesser premium, would provide the same benefits. Kelley also told the appellants that there would be an exclusion for any treatment related to Mrs. Hendrix’s hia-tal hernia for a period of time. Mrs. Hendrix testified that Kelley told them that the policy would be an 80/20 policy for inpatient and outpatient benefits. The first page of the application, which the appellants signed, contained a listing of benefits and the premiums for those benefits. The listing for “Outpatient Care Rider” did not contain a premium price, nor was such a premium included in the total premium that the appellants paid at that time. Mrs. Hendrix testified that she looked over the application before signing it but did not ask Kelley why there was not a premium amount for “Outpatient Care Rider.”
In September 1991, Mrs. Hendrix received outpatient treatment related to her hiatal hernia. Mega denied the submitted claim. On November 7, 1991, Mrs. Hendrix contacted Mega regarding the denial of the claim. She spoke to Terri Ashcraft. Mega produced the telephone call sheet concerning that conversation. It contained the following:
“Re: wants us to report her insurance agent that sold her the policy to the President. He totally misled her about coverage and he also told her that her hiatal hernia would not be waived in her policy & that she would have coverage for her hearing aids. Could not remember agent’s name; she told me to look at policy.”
Mrs. Hendrix testified that the call sheet was an accurate recollection of her conversation.
On November 12, 1991, Mrs. Hendrix spoke with Loretta Merka at Mega. The call sheet generated from that call reflected the following:
“I called Mrs. Hendrix — She said she dropped some good insurance to take this policy and now she finds out that policy doesn’t cover anything that they were told it covered....”
Mrs. Hendrix testified that she recalled telling someone at Mega that she had “dropped good insurance.”
On December 9, 1991, Mrs. Hendrix spoke with Carol Colosky at Mega. The call sheet generated from that conversation provided the following:
“She has given up. Was just going to cancel. Thought she had bought outpatient benefits.”
Mrs. Hendrix testified that the call sheet accurately reflected her memory of the conversation.
On December 18, 1991, Mrs. Hendrix mailed a letter, which was written by her daughter, to Colosky. It contained the following:
“Mr. Kelly stated that we had 80% coverage on: Outpatient Services, Inpatient Services, and on medications. All of which was to be the same coverage we had with World, with us saving approximately $100 per month. That’s the reason we changed companies.”
(Emphasis in original.)
In February 1992 the appellants requested an outpatient benefit rider. On April 2,1992, the appellants received the rider and paid an additional premium.
In 1993 Mr. Hendrix had heart surgery. The policy did not pay 80% of the medical expenses. In 1994 Mr. Hendrix had lung surgery. The appellants testified that following this surgery, they realized that the Mega policy was not a major medical policy but, rather, an indemnity policy. The appellants filed this action on October 18, 1994.
The dispositive issue in this appeal is whether the trial court erred in entering a *75 summary judgment on the fraud claims in favor of Kelley and Mega based on the statute of limitations.
A fraud action is subject to the two-year statute of limitations of § 6-2-38(l), Code 1975. The two-year period does not begin to run until the plaintiff has discovered, or should have discovered, the fraud. Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454 (Ala.1993). The question of when the party discovered, or should have discovered, the fraud is normally one for the jury. Kelly. However, there are times when this question is removed from the purview of the jury. The question should be taken from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. Kelly. Fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered. Kelly.
The appellants, undisputedly, were aware of facts that would have led a reasonable person, exercising reasonable diligence, to discover the alleged fraud more than two years before the filing of the action. In November and December 1991, the appellants complained that they had been misled and had not received the coverage they thought they were purchasing. The appellants even wrote a letter to Mega, complaining about Kelley’s statements concerning the coverages that they asserted they were told would be covered by the policy. In February 1992, the appellants purchased the outpatient rider — benefits that they asserted they were told were originally provided by the policy. They received the rider in April 1992.
From our review of the record, it appears that the appellants either actually knew, or should have known, of the alleged fraud on or before April 1992. They were aware of facts that would have put a reasonable person on notice of the possible existence of the alleged fraud on or before April 1992. The appellants’ complaint was not filed until October 18, 1994. The fraud claims are, therefore, barred as a matter of law.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES and CRAWLEY, JJ., concur.
MONROE, J., dissents.