Clyde Dorsey and Elizabeth Dorsey filed a complaint in the Elmore County Circuit Court against William S. Bowers; Willie James Thomas; Bowers Enterprises, Inc.; Paul Davis Systems, Inc., of Montgomery; State Farm Fire and Casualty Company; Paul W. Davis Systems, Inc.; Mike Sadler; Renee Rudolph; and various fictitious defendants. The Dorseys alleged claims of conspiracy, fraud, negligence, wantonness, breach of contract, negligent misrepresentation, bad faith, breach of express and implied warranties, negligent hiring, and negligent supervision.
Paul W. Davis Systems, Inc., filed a motion for a summary judgment, which was denied. Thereafter, Bowers filed a motion for a partial summary judgment. State Farm, Sadler, and Rudolph filed a motion for a summary judgment, a supporting brief, and supporting documents. Paul W. Davis Systems, Inc., filed a second motion for a summary judgment. The Dorseys filed oppositions to the summary judgment motions. Following a hearing, the trial court granted Paul W. Davis Systems, Inc., State Farm, Sadler, and Rudolph's summary judgment motions and denied Bowers's motion.
The case against Bowers and Thomas was tried before a jury. Following the completion of their case, Bowers and Thomas moved for directed verdicts on all counts. The trial court directed a verdict in favor of Bowers and Thomas on the Dorseys' breach of express and implied warranties claims only. The jury returned a verdict in favor of the Dorseys and against Bowers and awarded the Dorseys $7,000 in compensatory damages. The jury returned a verdict in favor of Thomas and against the Dorseys. The trial court entered a judgment accordingly. The Dorseys filed a motion for a new trial, which the trial court denied.
The Dorseys appeal, contending that the trial court erred in granting Paul W. Davis Systems, Inc., and State Farm's motions for a summary judgment; that the trial court erred in granting a directed verdict in favor of Bowers and Thomas on the breach of express and implied warranties claims; and that the verdict in favor of Thomas and the verdict against Bowers were inconsistent. Bowers cross-appeals, contending that the trial court erred in denying his motion for a directed verdict.
The record reveals the following pertinent facts. The Dorseys' lake home was damaged by a fire in March 1993. The Dorseys' home was covered by a policy of insurance issued by State Farm. The Dorseys contacted their insurance agent, Sadler, who contacted and introduced them to Bowers. Bowers, a contractor, operates Bowers Enterprises, Inc., which does business as Paul Davis Systems, Inc., of Montgomery, a franchise of Paul W. Davis Systems, Inc. Bowers made arrangements with the Dorseys to survey the damage, and he subsequently submitted an estimate to State Farm.
In a conversation with a claims adjuster, the Dorseys told the adjuster that they decided to have Bowers repair the damage, which included repairing the fireplace and the chimney. The Dorseys contracted with Bowers to make the necessary repairs. Bowers subcontracted the rebuilding of the fireplace and the chimney to Thomas. After the repairs were completed, the Dorseys asked Thomas whether the fireplace was safe. Thomas replied that the fireplace was built to Montgomery City Building Code specifications and that it was safe.
On the third time that the Dorseys used the fireplace, the chimney and surrounding *Page 54 
wall caught fire. Mrs. Dorsey testified that the fire damaged some interior and exterior walls, the chimney, the carpeting, and the kitchen floor. The Titus Volunteer Fire Department responded to the fire. The fire chief testified that when he arrived, fire was emanating from the fireplace area and that the firefighters had to knock out a large portion of the fireplace to extinguish the fire. He also testified that the header, a wooden horizontal structural support beam in the wall and incorporated into the masonry of the fireplace, ignited and that the fire spread to the wood frames supporting the roof of the house.
James Munger, a former deputy fire marshal, testified that he visited the Dorseys' house, viewed the header, and reviewed the report from the Titus Volunteer Fire Department. He also reviewed the applicable building and fire codes, as adopted by the State Fire Marshal. He stated that the fireplace construction violated the Southern Building Code requirements, as adopted by the State Fire Marshal, and caused the fire. Munger opined that the second fire was the "result of the wooden header being improperly framed in . . . the masonry of the fireplace."
It is undisputed that an employee of Bowers constructed the header before Thomas began work on the chimney. Thomas testified that although he did not measure the distance, there was sufficient clearance between the header and the masonry. He also testified that, in his opinion, the fire occurred because the mortar between the bricks, near the header, had fallen out. Additionally, it is undisputed that during the construction of the chimney, Bowers inspected Thomas's work on three separate occasions.
Mrs. Dorsey called Sadler and reported the fire. Mrs. Dorsey testified that Sadler stated that she and her husband "would be better off going after Mr. Bowers or State Farm would probably cancel [their] homeowner's [policy]." Sadler arranged for a claims adjuster, Rudolph, to inspect the Dorseys' home to evaluate the damage. After she evaluated the damage, Rudolph told Mrs. Dorsey that she would return to the office and prepare an estimate. She also stated that the Dorseys might be better off proceeding against Bowers. Rudolph asked Mrs. Dorsey to call and inform her of their decision. Mrs. Dorsey called Rudolph and stated that she and her husband were going after Bowers, and Rudolph stated that she would hold off on the estimate. Mrs. Dorsey testified that Rudolph gave no indication that State Farm would refuse to pay for the second fire loss and admitted that she did not submit a claim to State Farm for damages from the second fire.
A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Hand v. GreenspringsStorage, 678 So.2d 1187 (Ala.Civ.App. 1996). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id.
The Dorseys argue that State Farm was not entitled to a summary judgment on their breach of contract and bad faith claims. Specifically, they argue that they made an informal or constructive claim for the damage resulting from the second fire in their home and that Sadler's statement — that their insurance might be canceled if they made a claim — was a constructive denial of their claim. This argument is without merit. Mrs. Dorsey admitted that she did not make a claim for the fire damage and that she was never told that State Farm would refuse to pay for the damage. Likewise, we find that the Dorseys' argument — that State Farm's failure to pay their claim was in bad faith — is without merit.
The Dorseys also argue that Sadler and State Farm used economic duress to prevent them from filing a claim. To establish economic duress, a party must show " '(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absences of any reasonable alternative to the terms provided by the wrongdoer.' "Ponder v. Lincoln National Sales Corp., 612 So.2d 1169, 1171
(Ala. 1992) (quoting Clark v. Liberty Nat'l Life Ins. Co.,592 So.2d 564, 567 (Ala. 1992)). Furthermore, *Page 55 
"[a] claim of economic duress cannot be based merely upon the grounds of driving a hard bargain. Rather, the 'wrongful act' prong of the test . . . is not satisfied unless the victim has acted in response to unlawful or unconscionable pressure."Ponder, 612 So.2d at 1171. Moreover, "[t]he doctrine of economic duress applies only to 'special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extorsive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto.' " Ponder, 612 So.2d at 1171 (quoting Clark v. LibertyNat'l Life Ins. Co., 592 So.2d at 567). Based upon our review of the record, we conclude that the Dorseys failed to produce substantial evidence to establish the elements of economic duress.
The Dorseys next argue that the trial court erred in granting State Farm's summary judgment motion because there was discovery pending. The mere pendency of discovery requests does not bar a summary judgment. Hope v. Brannan, 557 So.2d 1208
(Ala. 1989). "However, if it can be ascertained that discovery is crucial to the nonmoving party's case, then it is error for the trial court to enter a summary judgment before the discovery has been completed." Hope, 557 So.2d at 1212. The burden is on the nonmoving party to show that the requested discovery is crucial. Id. The Dorseys did not submit an affidavit in compliance with Rule 56(f), Ala. R. Civ. P., setting forth why they were unable to make substantive response to State Farm's motion without responses to the discovery requests. Hope, supra. Therefore, we conclude that the trial court properly entered a summary judgment in favor of State Farm.
The Dorseys contend that the trial court erred in entering a summary judgment in favor of Paul W. Davis Systems, Inc., because, they say, Paul Davis Systems, Inc., of Montgomery is an agent of Paul W. Davis Systems, Inc.
Agency is generally a question for the trier of fact.Malmberg v. American Honda Motor Co., 644 So.2d 888 (Ala. 1994). The burden of proving agency rests with the party asserting its existence, and the existence of an agency may not be presumed. Malmberg. "The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven. . . ." Malmberg, 644 So.2d at 890.
Bowers Enterprises, Inc., d/b/a Paul Davis Systems, Inc., of Montgomery, entered into a franchise agreement with Paul W. Davis Systems, Inc. That agreement provides, in pertinent part, as follows:
 "7.1 Independent Contractor Status. Franchisee is an independent contractor and is not an agent, partner, joint venturer or employee of Franchisor. No fiduciary relationship between the parties exist. Franchisee shall have no right to bind or obligate Franchisor in any way nor shall it represent that it has any right to do so.
". . . .
 "15.1 Employees Under Control of Franchisee.
Franchisee agrees that all persons hired or employed by or under contract with Franchisee in discharge of duties hereunder shall be considered to be employees or associates of Franchisee and not of Franchisor, and such employees and associates shall be solely and exclusively under Franchisee's orders, direction and control, and Franchisee shall at its own cost and expense comply with all unemployment insurance, old age pension, and other social security acts or statutes applicable to employers or employees or both, and whether now in force, or hereafter enacted, and shall pay, duly and punctually any and all rates, taxes, assessments, and contributions that may be required or demanded under or by virtue of any of said acts or statutes."
Paul W. Davis Systems, Inc., submitted affidavits from Thomas Parrish, vice president of field operations, and from Bowers, stating that Paul W. Davis Systems, Inc., neither controlled, nor had the authority to control, work performed by Bowers Enterprises, Inc. The Dorseys did not present any evidence that Paul W. Davis Systems, Inc., *Page 56 
reserved any right of control, or exercised any control, over the contract that Bowers Enterprises, Inc., had with the Dorseys, or Bowers Enterprises, Inc.'s, performance of the work on the Dorseys' house. Therefore, we conclude that the trial court properly entered a summary judgment in favor of Paul W. Davis Systems, Inc.
The Dorseys next argue that the trial court erred in directing a verdict in favor of Bowers and Thomas on their implied warranty claim because, they say, the chimney was covered by an implied warranty of merchantability under §7-2-314, Ala. Code 1975. That section provides that there is an implied warranty of merchantability if the "seller is a merchant with respect to goods of that kind." The term "goods" is defined in § 7-2-105, which states:
 "(1) 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . . 'Goods' also include the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 7-2-107)."
The term "sale" is "the passing of title from the seller to the buyer for a price (Section 7-2-401)." § 7-2-106(1), Ala. Code 1975. Based upon our consideration of the foregoing sections, we conclude that the Dorseys' chimney was not "goods"; therefore, there was no implied warranty of merchantability. Likewise, the Dorseys argument regarding an express warranty under § 7-2-313 is flawed because the chimney was not "goods" within the meaning of § 7-2-105.
Last, the Dorseys argue that the verdicts against Bowers and in favor of Thomas were inconsistent because, they say, their claim against Bowers was based on the negligence of Thomas.
"Where liability of the master may be rested on account of the negligence of employees other than the employee who was made a defendant, a verdict against the master, but exonerating the employee who was made a defendant, is not inconsistent."Atlantic Coast Line R.R. v. Kines, 276 Ala. 253, 258,160 So.2d 869, 873 (1963) (citations omitted). See also, Louisville Nashville R.R. v. Garrett, 378 So.2d 668 (Ala. 1979).
The Dorseys' claims of fraud, negligence, wantonness, negligent misrepresentation, negligent hiring, and negligent supervision against Bowers went to the jury. Bowers's liability was not based solely upon the acts of Thomas but was also based upon the acts of the employee who installed the header and upon Bowers's inspections of Thomas's work. The jury returned a general verdict against Bowers and awarded the Dorseys $7,000 in compensatory damages. The jury also returned a verdict in favor of Thomas. Therefore, we conclude that the jury's verdicts in favor of Thomas and against Bowers are not inconsistent.
On cross-appeal, Bowers contends that the statute of limitations had run on the Dorseys' claims for fraud, negligence, and wantonness and that, therefore, the trial court erred in denying his motion for a directed verdict. The standard of review applicable to a directed verdict motion is whether the nonmovant presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. McCollum v. Drummond Co., 679 So.2d 1129
(Ala.Civ.App. 1996).
The statute of limitations for negligence and wantonness actions is two years from the date the injury occurred. §6-2-38, Ala. Code 1975; Henson v. Celtic Life Ins. Co.,621 So.2d 1268 (Ala. 1993). Action for injury or damage to property " 'accrues . . . on the date of the injury or damage, and not
upon the occurrence of the negligence itself, or the last known negligent act.' " Rumford v. Valley Pest Control, Inc.,629 So.2d 623, 627 (Ala. 1993) (quoting 54 C.J.S. Limitations ofActions, § 176 (1987)) (citations omitted) (emphasis in original). Therefore, we conclude that the Dorseys' action for negligence and wantonness accrued on the date of the second fire, November 27, 1993; therefore, the action was timely filed.
Bowers also argues that the Dorseys' fraud claims were barred by the statute of limitations because, he says, the Dorseys *Page 57 
had questions regarding the truthfulness of statements made by Bowers.
The statute of limitations for fraud claims is two years. § 6-2-38(l), Ala. Code 1975. However, the statute of limitations for a fraud claim does not begin to run until the fraud is discovered, or should have been discovered. § 6-2-3, Ala. Code 1975; Kelly v. Connecticut Mut. Life Ins. Co.,628 So.2d 454 (Ala. 1993). The question of when a party discovered, or should have discovered, the fraud is a question for the jury. Kelly. The question of when a plaintiff should have discovered the fraud is taken away from the jury and is decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of the fraud. Id.
Thomas represented to the Dorseys that the fireplace complied with the Montgomery City Building Code (the Southern Building Code) and that it was safe. Bowers represented to the Dorseys that Thomas was one of the best brickmasons around and had built fireplaces for 30 years without a complaint. The evidence reflects that the insufficiency of the space between the header and the masonry could not be seen after the fireplace was constructed. Based upon the facts before the jury, the jury could have concluded that the fireplace was not safe as constructed and that the Dorseys did not know that it was not safe until the fire occurred.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
All the judges concur.