HOUSTON, Justice.
The defendant, F. Page Gamble, appeals from a summary judgment for the plaintiff, Corley, Moncus & Ward P.C. (“Corley Mon-cus”), in this dispute over an attorney fee. We reverse and remand.
The following material facts appear to be undisputed: In 1993, Lamar Moseley contacted Gamble, an attorney then associated with the law firm of Corley Moncus, to discuss the possibility of suing a pharmacy. Moseley claimed to have suffered a severe injury to his eyesight as the result of taking prescription medication purchased from the pharmacy. Gamble was a friend of Moseley’s son and a longtime friend of Moseley’s family. Moseley’s only contact with Corley Moncus was through Gamble. After his initial discussions with Moseley, Gamble approached the partners at Corley Moncus and requested permission to file an action on Moseley’s behalf against the pharmacy. The partners refused to grant permission, out of concern that the firm’s involvement might jeopardize its relationship with a longtime client, the Alabama State Board of Pharmacy.
Based on the partners’ objections, Gamble, on behalf of Corley Moncus, referred Moseley to the law firm of Heninger, Burge & Vargo (“Heninger Burge”). Moseley signed a contingent fee contract with Heninger Burge, by which that firm would receive 33-1/3% of any recovery if the case was settled and 40% if the case was resolved through a trial. By a letter to Gamble, dated November 19, 1993, David M. Cowan of the Heninger Burge firm set out the terms of his firm’s agreement with Gamble with respect to the referral of the Moseley case:
“This letter will serve to confirm all agreements that were reached in this case regarding fees. We have Mr. Moseley signed up to a 1/3 if settled or 40% if tried contract. Out of that, we will split the fee on a 55/45 basis, with my firm to receive the 55%. Additionally, I understand that you want to remain as active as possible in this file, while at the same time having your name and/or involvement remain anonymous.”[1]
The Heninger Burge firm customarily did not agree to pay more than 1/3 of its fee to a *629 referring firm. Cowan testified by deposition as follows:
“Q. Mr. Cowan, what is the customary forwarding fee if a referring attorney does not actively participate in the file but simply forwards it to Heninger, Burge and Vargo for handling?
“A. Customarily, it would be on a two-third, one-third basis.
“Q. Why was the referral fee to Page Gamble higher than the customary one-third that you have described?
“A. In discussions with Page — and as I recall there were some pharmacy records that Mr. Moseley had at that time which Page brought ... when we went to meet with Mr. Moseley. It was based on Page doing work in the file to include some medical research, things of that nature on the drug that we were dealing with. And Page also had some contact or personal knowledge of the treating physician in the case_ Over at Brookwood at the Eye Foundation, and Page was at that time given the assignment and volunteered to make some contact with the physician to tie up the causation end of the case because, at the outset, that looked like that was going to be a big issue in the ease. And then Page was to remain active in the file as regards contact with the Moseleys. Any contact that I had with them or needed to have with them, he was to be involved with.
“Q. Would it be fair to say that as a result, the fee sharing amount to Page Gamble was higher than the customary [33-1/3%]?
“A Yes, sir.
“Q. If Page Gamble had failed to remain active in this file and had done nothing to assist you in bringing the matter to a conclusion, either with the doctors as you have described or in the handling of the clients, the Moseleys, wouldn’t it be fair to say that that conduct could have affected the division of the fee?
“A I wouldn’t have paid him 45 percent.”
From December 1993 to December 1994 Gamble actively, but anonymously, participated in the preparation and prosecution of Moseley’s case, billing approximately 41 hours to a file that he had opened at Corley Moncus. No other attorney with Corley Moneus devoted any time to the Moseley case during that period. In January 1995, Gamble resigned from Corley Moncus and associated with another firm. Gamble advised Moseley that because he was no longer associated with Corley Moncus he could enter an appearance in Moseley’s case and continue his representation without having to remain anonymous. Gamble explained to Moseley that he had the option to have Cor-ley Moncus remain involved in his case. Moseley, being aware that Corley Moncus had declined to file the action on his behalf, and not knowing anyone else at that firm, decided to sever any relationship that he might have had with Corley Moncus by virtue of his relationship with Gamble. On March 11, 1995, Moseley wrote the following letter to Corley Moncus:
“I am writing to inform you that I wish to terminate any relationship which may have existed between myself and the law firm of Corley, Moncus & Ward, P.C., as I wish for Page Gamble to continue to handle this matter along with David Cowan.”
In late 1995, almost a year after Gamble had resigned from Corley Moncus, Gamble and the Heninger Burge firm settled Moseley’s case for $900,000. Heninger Burge, in accordance with its contingent fee agreement with Moseley, received $300,000 from the settlement. Heninger Burge paid Gamble 45% of that fee — $135,000. Gamble tendered to Corley Moneus a check in the amount of $4,123.79, representing $23.79 in expenses that Gamble had advanced while an associate with Corley Moncus and payment (at $100.00 per hour) for the 41 hours that Gamble had put into the case while employed with Corley Moncus.
Corley Moncus rejected Gamble’s payment and filed this action, seeking a judicial determination of its rights under the referral agreement between Gamble and Heninger Burge. Gamble counterclaimed, alleging that Corley Moncus was entitled only to a *630 share of the Moseley fee based on the doctrine of quantum meruit. Gamble and Cor-ley Moncus filed cross motions for summary judgment. The trial court denied Gamble’s motion and entered a summary judgment for Corley Moncus, awarding Gamble a $20,000 quantum meruit fee and awarding Corley Moncus $115,000, plus prejudgment interest calculated at 8% and postjudgment interest calculated at 12%. Gamble appealed.
The basic point of contention between Gamble and Corley Moncus is whether the summary judgment is due to be affirmed, under this Court’s decision in Vowell & Meelheim, P.C. v. Beddow, Erben & Bowen, P.A., 679 So.2d 637 (Ala.1996), or whether the judgment should be reversed, based on the decision of the Court of Civil Appeals in Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So.2d 445 (Ala.Civ.App.1989). We note, initially, that we believe Vowell and Gaines are consistent with each other and that each was properly decided. From our perspective, the disposi-tive issue here concerns which of these decisions controls, based on the evidence presented.
In Vowell, the Beddow law firm sued a former shareholder and his new firm, seeking the Beddow firm’s share of attorney fees from clients that had had contingent fee contracts with the Beddow firm and had followed the former shareholder to his new firm. The former shareholder had never advised the other members of the firm that he was meeting with the clients with respect to his departure from the firm and with respect to his representing them in the future. The trial court held that the former shareholder was entitled only to the percentage of the fees recovered that he would have received had he stayed with the Beddow firm, plus a reasonable hourly rate for the time he spent in completing the work for the clients. This Court affirmed, holding that the pending contingent-fee contracts were assets of the Beddow firm, which had originated those contracts, and that the former shareholder had breached his fiduciary duty to the Beddow firm by enticing the firm’s clients to terminate their relationship with the firm. Thus, Vowell addressed the problem of allocating attorney fees in a situation where a former member of a law firm solicited the firm’s clients and scrambled for possession of client files in breach of a fiduciary duty owed to the firm.
In Gaines, Robert Barnett, Sr., whose minor son had been killed in an automobile accident, arranged with another son, Robert Barnett, Jr., then a partner in the Gaines law firm, to enter into settlement negotiations with the tortfeasor’s liability insurance carrier. The son’s attempt to settle the case was unsuccessful. Thereafter, Mr. Barnett, through the son, arranged for the law firm of Hare, Wynn, Newell & Newton (“Hare Wynn”) to file a wrongful death action on his behalf. The division-of-fees agreement between Hare Wynn and the Gaines firm provided for the Gaines firm to receive 50% of the 25% contingency fee agreed to by Mr. Barnett, with the understanding that Mr. Barnett’s son would maintain an active role in the case until it was resolved. Testimony indicated that Hare Wynn agreed to assist Mr. Barnett’s son at a reduced rate out of professional courtesy extended because the case involved the death of a fellow lawyer’s brother and because Mr. Barnett’s son, acting for the Gaines firm, would be sharing the workload. Shortly after the fee agreement had been reached between Hare Wynn and the Gaines firm, Mr. Barnett’s son resigned from the Gaines firm and discontinued his involvement with the case. Mr. Barnett later discharged the Gaines firm and requested an invoice for any expenses that had been incurred by that firm up to the time it was discharged.
Mr. Barnett then negotiated and entered into a “formal” agreement with Hare Wynn, and Hare Wynn eventually settled the case for $1,500,000. On motion of the Gaines firm to enforce a fee agreement and establish an attorney’s lien for 12.5% of the amount recovered (50% of the 25% contingency fee), the trial court ruled that any agreement between the Gaines firm and Hare Wynn was subject to a condition that the Gaines firm actively participate in the case, a condition that was not fulfilled, and that the discharge of the Gaines firm had the effect of relieving Hare Wynn of its obligation to pay the Gaines firm *631 12.5% of the recovery. The trial court awarded the Gaines firm a $7,500 fee based on the doctrine of quantum meruit. The Court of Civil Appeals affirmed, holding that Mr. Bennett’s discharge of the Gaines firm made it impossible for that firm to satisfy a condition precedent to Hare Wynn’s obligations under the fee agreement — continued, active participation in the case by the Gaines firm.
The present situation closely resembles the situation in Gaines. Gamble presented evidence indicating that Corley Moneus’s continued, active (albeit anonymous) participation in the case was a condition precedent to its right to receive a portion of the contingent fee. A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises. A condition precedent may relate either to the formation of a contract or to liability under it. Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the instrument as a whole. Fidelity & Casualty Co. of New York v. DeLoach, 280 Ala. 497, 195 So.2d 789 (1967). The evidence indicates that Heninger Burge would not have agreed to a 55%/45% split of the contingent fee without Gamble’s assurances that he would participate in the case and would share the workload. Gamble, the evidence unquestionably shows, fulfilled his obligations under the referral agreement; however, Gamble’s resignation from Corley Moneus prevented Corley Moneus from satisfying the condition requiring its continued participation in the case through Gamble.
Having carefully considered the record and the briefs, we conclude that Gaines, not Vo-well, controls, based on the evidence presented. As previously noted, Vowell dealt with a situation different from the one presented here. In Vowell, the former shareholder breached a fiduciary duty to his former partners by secretly soliciting the Beddow firm’s clients. No evidence in the present case indicates that Gamble breached a fiduciary duty. In Vowell, the Beddow firm had contingent fee contracts with the clients solicited by the former shareholder — contracts that this Court properly held were assets of the Beddow firm. In the present case, Corley Moneus had no fee agreement with Moseley and • its referral agreement with Heninger Burge was subject to a condition that it did not satisfy.
Based on the rationale of Gaines, we conclude that Corley Moneus is entitled to be compensated on a quantum meruit basis for its participation in the case up until Gamble resigned. Whether the amount tendered by Gamble was sufficient is a question for the trial court. Gamble may retain the remainder of the fee, pursuant to his agreement with Heninger Burge. Because Corley Mon-cus was not entitled to a judgment as a matter of law, the summary judgment was improper. Rule 56, Ala.R.Civ.P.[2]
For the foregoing reasons, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, COOK, SEE, and LYONS, JJ„ concur.

. Rule 1.5, Alabama Rules of Professional Conduct, provides in part':
"(e) A division of fee between lawyers who are not in the same firm, including a division of fees with a referring lawyer, may be made only if:
“(1) either (a) the division is in proportion to the services performed by each lawyer, or (b) by written agreement with the client, each lawyer assumes joint responsibility for the representation, or (c) in a contingency fee case, the division is between the referring or forwarding lawyer and the receiving lawyer;
"(2) the client is advised of and does not object to the participation of all the lawyers involved;
"(3) the client is advised that a division of fee will occur; and
"(4) the total fee is not clearly excessive."

. Gamble argues in the alternative that the trial court erred in calculating prejudgment interest at the rate of 8%. However, in light of our holding that it was Gamble, not Corley Moneus, who was entitled to enforce the fee agreement, we pretermit any discussion of this issue.