Christopher D. **SHUFFORD**, Plaintiff,

v.

**INTEGON INDEMNITY CORPORATION; et al.**, Defendants.

**No. CIV.A. 99–T–441–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 4, 1999.

James R. Morgan, Morgan & Shands, Birmingham, AL, Mark D. McKnight, Birmingham, AL, for plaintiff.

Robert M. Girardeau, Walter J. Price, III, Huie, Fernambucq & Stewart, Birmingham, AL, for Integon Indem. Corp., Bankers and Shippers Ins. Co., defendants.

Richard W. Smith, Steven L. McPheeters, Rives & Peterson, Birmingham. AL, for Warren Agency, Daniel E. Sosnowski, defendants.

### ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Christopher D. Shufford has brought this lawsuit claiming that his car insurer and an agent thereof violated state laws of contract and tort in their handling of an insurance claim Shufford had submitted to recover for the destruction of his car by fire. Shufford has named as defendants Integon Indemnity Corporation, Integon Insurance Company, Bankers and Shippers Insurance Company, the Warren Agency, and Daniel E. Sosnowski. Because Integon Indemnity Corporation, Integon Insurance Company, and Bankers and Shipper Insurance Company are corporations with common ownership and control, the court will refer to them collectively as "Integon." And because the Warren Agency is a corporation in which Sosnowski is the principal shareholder, and because Shufford does not assert any claims against the Warren Agency independent of those alleged against Sosnowski, the court will refer to the Warren Agency and Sosnowski collectively as "Sosnowski."

The jurisdiction of this court has been properly invoked pursuant to 28 U.S.C.A. § 1332. Shufford initially raised the following six causes of action against all defendants: breach of contract; bad faith refusal to investigate and to pay a claim; fraud; professional negligence and negligent and wanton adjustment of claims; intentional infliction of emotional distress; and invasion of privacy and false light. Shufford subsequently dropped the breach-of-contract and bad-faith-refusal-to-pay claims as against Sosnowski.

This case is currently before the court on motions filed by Integon and Sosnowski for summary judgment. For the reasons that follow, the court concludes that these motions should be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

This lawsuit arises out of an insurance claim that Shufford filed with Integon, the insurer for Shufford's 1992 Mitsubishi Eclipse. Shufford filed the claim on November 9, 1995, after he discovered that his car, which he had left by the side of the road when it broke down the night before, had been completely destroyed by fire.

Under its normal procedures, Integon insurance adjustors use a checklist of "fraud indicators," each of which is assigned a certain number of points, to determine whether to initiate an investigation of a policy-holder's loss. Although Shufford's claim involved only one of the "fraud indicators," the adjustor who processed his report checked off three others to create the appearance of a necessity for investigation, and Integon thus began to investigate Shufford's claim. This investigation included an inspection and appraisal of Shufford's car, as well as demands that Shufford file a good deal of paperwork and submit to an examination under oath. All of these aspects of the investigation were provided for in Shufford's insurance policy.

Though Shufford cooperated with Integon's demands, Integon employed a series of delaying tactics that greatly protracted the processing of Shufford's claim. For example, Integon imposed very onerous demands on Shufford for paperwork to support his claim, requiring him to file and re-file forms due to minor mistakes and omissions. Integon sent Shufford a form letter indicating that Shufford's first proof-of-loss form, submitted in February 1996, was incomplete and not notarized, and that he would have to resubmit the paperwork. Integon also rejected Shufford's second attempt at filing a proof of loss, submitted in March 1996, allegedly for lack of notarization.

In June 1996, an Integon representative sent Shufford yet another copy of the forms he was required to fill out, and enclosed a letter stating that, as of that date, no documents had been received by Integon. The letter further stated that Integon considered itself prejudiced by Shufford's "failure to cooperate" with its investigation of his claim, and that it would terminate the investigation and close the claim file if Shufford did not submit the enclosed documents fully and correctly completed. Once again, Shufford filled out the forms and submitted them to Integon.

In addition to the repeated requests for paperwork, Integon required Shufford to meet with Daniel Sosnowski, who presented himself to Shufford as an agent of Integon participating in the investigation of Shufford's loss. During a March 7, 1996, meeting with Shufford, Sosnowski made several false statements and threats regarding Shufford's claim, as well as several unauthorized predictions about the likely outcome of his claim. For example, Sosnowski encouraged Shufford to withdraw his claim, saying that Integon would undoubtedly deny it. He told

Shufford that he would have to "take his claim to court" in order to be compensated, and he suggested that if Shufford did pursue litigation, Integon would intensify its investigation and implicate Shufford in the burning of his car. Sosnowski also told Shufford that, should the matter be litigated, Integon could produce witnesses who would testify against Shufford. In particular, Sosnowski said that Integon's experts, who were highly experienced and whose testimony would be trusted, would testify that Shufford had poured gasoline all over his car. Finally, Sosnowski stated that further pursuit of the claim would lead Integon to turn the matter over for possible criminal investigation of Shufford. Shufford interpreted Sosnowski's statements as an effort to frighten and intimidate him, and to pressure him into withdrawing his claim.

Despite Integon's scare tactics, Shufford did retain legal counsel to assist him in pursuing his claim. On February 14, 1997, fifteen months after he filed his claim, Shufford, through counsel, agreed to accept a settlement from Integon for $ 10,-000, minus Shufford's $ 250 deductible. This amount was, however, less than the Integon appraiser's valuation of the retail value of the car, which, unbeknownst to Shufford, was $ 11,300. It was also less than the average quote that the appraiser had received on the car from local car dealerships, which was $ 10,900. The lienholder on Shufford's car agreed to release the title and security interest lien, which at that time was valued at $ 14,498.16, in exchange for the $ 9,750 settlement check. However, a deficit of $ 4,000 still appears on Shufford's credit report, which since the settlement has caused Shufford to be denied credit.

## III. BREACH OF CONTRACT

Shufford first claims that Integon breached its contract under the insurance policy by failing to pay the full amount of his claim under the insurance policy, and by failing to pay his claim in a timely fashion, despite his cooperation with all of Integon's demands. Integon argues that

summary judgment should be granted on this claim, asserting two affirmative defenses that Integon believes should resolve the issue in its favor as a matter of law. First, Integon contends that the parties reached an accord and Shufford received satisfaction of his claim, thereby voiding Shufford's claims for breach of contract. Secondly, Integon asserts that Shufford's breach-of-contract claim is precluded by Shufford's failure to fulfill the conditions precedent to Integon's liability on the contract. The court rejects both of these arguments, and therefore will deny summary judgment on the contract claim.

### A. Accord and Satisfaction

Integon maintains that, by accepting the settlement offer, Shufford received accord and satisfaction of his claim, and thereby discharged any liability Integon may have had under the contract. Accord and satisfaction occurs when parties agree to substitute some performance different from that originally contemplated in the terms of the contract, and is thus a means through which parties discharge their duties under a contract. See 6 Arthur Linden Corbin, *Corbin on Contracts* § 1276, at 115 (1962). Under Alabama law, the elements required to achieve an accord and satisfaction are "(1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration." *Austin v. Cox*, 492 So.2d 1021, 1022 (Ala.1986); *see also Ray v. Alabama Central Credit Union*, 472 So.2d 1012, 1014 (Ala.1985). Shufford contests only the third of these elements; he contends that the parties could not as a matter of law have achieved a "meeting of the minds" because his decision to accept the settlement was induced by fraudulent misrepresentations made by Integon and because he decided to accept the settlement while under economic duress. The court concludes that Shufford's response to Integon's affirmative defense of accord and satisfaction raises genuine issues of fact in this case.

■■■ The issue of whether the parties have achieved a "meeting of the minds" is usually an issue of fact rather than a determination of law, and is therefore typically left to a jury. *Ray*, 472 So.2d at 1014. As to Shufford's argument that any accord and satisfaction was vitiated by fraud, the court agrees that, under Alabama law, "when an agreement has been induced by deliberate fraud, the written document reciting that agreement is void and is of no more binding efficacy than if it had no existence, or were a piece of waste paper." *Environmental Sys., Inc. v. Rexham Corp.*, 624 So.2d 1379, 1385 (Ala. 1993). Shufford asserts that he was induced to accept Integon's settlement by Sosnowski's false statements about having expert and other testimonial evidence implicating Shufford in the burning of his car. Because he believed that settlement was the only way he could avoid a highly intrusive investigation and possible criminal prosecution, Shufford argues, he accepted Integon's "low-ball" offer and forewent legal action in pursuit of his claim. From this evidence, a reasonable juror could conclude that Shufford was induced by fraud to enter the settlement, thereby rendering the accord and satisfaction void.

Shufford also argues that the alleged accord and satisfaction is voidable, because of lack of assent, on the ground that he entered into the settlement agreement under duress. The Introductory Note to the topic "Duress and Undue Influence" in the Restatement (Second) of Contracts, §§ 174–177 (1981), states that there are two types of duress, each with a slightly different legal effect. First, a person experiences duress when he is physically compelled to manifest assent to a contract, despite all his intentions to the contrary; this type of duress prevents the contract from ever forming, because the element of assent is lacking. *Id.* The second kind of duress occurs where a person is induced through improper threats to assent to a contract; in these cases, a contract is formed, but it is said to be voidable. *Id.* The type of duress to which Christopher Shufford contends he was subjected, and under which he manifested assent to Integon's settlement offer, is the latter, since he contends that improper threats, rather than physical force, compelled him to accept the offer.

Within the sphere of duress created through improper threats, there are several subcategories, each defined by the type of harm threatened or the effect of the threat on the victim. These types of improper threats are outlined in § 176, which provides:

. "(1) A threat is improper if

(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property,

(b) what is threatened is a criminal prosecution,

(c) what is threatened is the use of civil process and the threat is made in bad faith, or

(d) the threat is a breach of the duty of good faith and fair dealing under a contract wit the recipient."

Restatement (Second) of Contracts. Section 176(1) therefore provides that threats are improper if they are themselves crimes or torts, if they threaten undeserved civil or criminal legal action, or if they constitute a breach of the duty of good faith and fair dealing. Shufford maintains that he was subjected to this kind of duress, in that he was threatened with criminal prosecution if he insisted on zealously pursuing his claim. A factfinder could reasonably conclude that Shufford's acceptance of the settlement offer was compelled by his fear of Sosnowski's threats of criminal prosecution, and therefore that no accord and satisfaction was achieved.

A threat can also give rise to duress that voids a contract if the threat falls within the language of § 176(2), which provides:

"(2) A threat is improper if the resulting exchange is not on fair terms, and

(a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,

(b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or

(c) what is threatened is otherwise a use of power for illegitimate ends."

Restatement (Second) of Contracts. Section 176(2) therefore appears to encompass the concept of "economic duress" to which Shufford claims to have been subjected. Though the Restatement does not refer specifically to "economic duress," a threat of economic hardship that induces a party to enter into an agreement can meet the criteria for an improper threat outlined in § 176(2).

But more to the point, the Alabama Supreme Court held in *Ralls v. First Federal Savings and Loan,* 422 So.2d 764, 766 (Ala.1982), that a plaintiff can rebut the affirmative defense of accord and satisfaction by demonstrating that his decision was made under economic duress. The court warned, however, "The doctrine applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto." 422 So.2d at 766 (quoting 17 C.J.S. Contracts § 177 (1963)).

■ In order to prove under Alabama law that he was under economic duress, Shufford must demonstrate three elements: "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." *International Paper v. Whilden,* 469 So.2d 560, 562 (Ala.1985). Shufford has provided evidence to support all three of these elements. As to the first, Shufford maintains that Sosnowski threatened that Integon would reject his claim, and that it would subject him to a highly invasive investigation and to potential criminal prosecution if he sought court enforcement of the con-

tract. Regarding the second, he maintains that the long delays in Integon's processing of his claim placed him in financial distress, both because interest was accruing on the lien on his car as time passed and because he could not afford to have Integon reject his claim outright. Finally, Shufford argues that he effectively had no option other than to accept the settlement because he reasonably believed that his only other option would lead to denial of his claim and possible criminal prosecution. Based on these facts, a factfinder could reasonably conclude that Shufford entered into the settlement under economic duress, and therefore that no accord and satisfaction was achieved.

### B. *Conditions Precedent*

■ Integon also seeks summary judgment on Shufford's breach-of-contract claim by asserting that it was absolved of liability for Shufford's claim by his failure to comply with certain conditions precedent required by the contract. The Alabama Supreme Court has defined conditions precedent as "fact[s] (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Gamble v. Corley, Moncus, and Ward, P.C.,* 723 So.2d 627, 631 (Ala.1998). Conditions precedent "may relate either to the formation of a contract or to liability under it." *Id.*

■ To support this defense, Integon points to its insurance policy with Shufford, which imposes certain duties upon policy-holders in the event that they seek compensation from Integon for losses or thefts, and states that policy-holders may not take legal action against Integon until such duties are performed. Specifically, Integon argues that Shufford failed to comply with a policy clause which states that if the insured and the insurer disagree as to the amount of the loss, "either may demand an appraisal of the loss," and which provides a system for resolution of disputes between appraisers. By failing to hire an outside appraiser to contest Integ-

on's assessment of the loss, Integon argues, Shufford did not comply fully with the terms of the policy, and Integon is therefore absolved of liability.

The language of the policy does establish certain conditions precedent to liability, as indicated by its statement that "[n]o legal action may be brought against us until there has been full compliance with all the terms of the policy." However, hiring an independent appraiser is not one such condition. First, the plain language of the appraisal clause suggests that it is not a condition; by stating that policyholders "may" demand an appraisal rather than that they must do so, the policy in no way suggests that this clause contains a requirement that must be fulfilled before Integon may be held liable. Furthermore, the appraisal clause is not listed in the section that enumerates the policy-holder's "duties after an accident or loss." That section states that policy-holders "must" cooperate with Integon's investigation, send copies of legal papers related to the investigation, submit to physical exams and examinations under oath, release certain documents, and submit a proof-of-loss form. The failure to include the appraisal clause in this fairly lengthy list of requirements provides further evidence that the hiring of an independent appraiser was not intended as a condition precedent to liability. (Incidentally, Shufford has presented evidence to suggest that he complied with all of these requirements.)

Summary judgment is thus inappropriate on Shufford's breach-of-contract claim.

## IV. STATUTE OF LIMITATIONS

The court now turns to Shufford's remaining claims, all of which arise under Alabama laws of tort. As to all of these claims, Integon and Sosnowski present the threshold argument that summary judgment should be granted because Shufford's claims were filed in court too late. Under Alabama law, the statute of limitations for "[a]ll claims for an injury to the person or rights of another not arising from contract and not specifically enumerated in this section" is two years. 1975 Ala.Code § 6–2–

38(l). Because all of Shufford's tort claims are subject to this time limitation, the only remaining issue is when the limitations period begins to run on each claim.

The court turns first to Shufford's claim of intentional infliction of emotional distress, also known in Alabama as the tort of outrage. The Alabama Supreme Court has held that because intentional infliction of emotional distress often occurs over time and accrues through a series of related incidents, these claims "will not be barred until two years after the last tortious act by the defendant, particularly where the defendant's conduct does not cross the threshold and become an actionable tort until it is demonstrably extreme and outrageous." *Continental Casualty Ins. Co. v. McDonald,* 567 So.2d 1208, 1216 (Ala.1990).

■ Even considering the evidence in the light most favorable to Shufford, however, the court concludes that he raised his claims of outrage, both against Integon and against Sosnowski, too late. Because Shufford had contact with Sosnowski on only one occasion, on March 7, 1996, the statute of limitations for the outrage claim against him necessarily started to run on that date. Thus, when he filed suit on May 4, 1999, the two-year actionable period had already expired. As to Shufford's claim against Integon, a reasonable factfinder would have to conclude, at the very least, that Integon committed no more acts inflicting emotional distress on Shufford after he accepted his settlement offer from Integon, that is, after February 14, 1997. This claim was therefore also untimely filed on May 4, 1999, more than two years after the last possible date on which statute of limitations could have begun to run. The court will therefore grant summary judgment on Shufford's intentional-infliction-of-emotional-distress claims against Integon and Sosnowski.

The same analysis applies with equal force to Shufford's claims of professional negligence, negligent and wanton adjustment of claims, invasion of privacy, and

false light. All of these claims are subject to a two-year statute of limitations which Shufford clearly did not meet.

■ The starting point for the running of the statute of limitations on Shufford's fraud and bad faith claims is more flexible, and therefore requires closer scrutiny by the court. Under Alabama law, the two-year statute of limitations for a fraud action "does not begin to run until the plaintiff has discovered, or should have discovered, the fraud." *Hendrix v. Kelley,* 689 So.2d 73, 75 (Ala.Civ.App.1996); *see also Liberty National Life Ins. Co. v. McAllister,* 675 So.2d 1292, 1297 (Ala.1995); *Kelly v. Connecticut Mut. Life Ins. Co.,* 628 So.2d 454 (Ala.1993). Alabama courts have further held that the issue of when the plaintiff discovered, or should have discovered, the fraud is normally an issue of fact that should be submitted to a jury. *Id.* Only in the extraordinary eventuality that the plaintiff actually knew facts that would have put a reasonable person on notice of the fraud should the court decide this issue itself. *Id.; Hicks v. Globe Life & Accident Ins. Co.,* 584 So.2d 458, 463 (Ala.1991).

■ In this case, the fraudulent statements of which Shufford primarily complains are those asserted by Sosnowski during their March 7, 1996, meeting— his telling Shufford, for example, that Integon had witnesses who could testify against him. Shufford also alleges that other agents of Integon committed fraud by deliberately misinforming Shufford that it had not received his paperwork, or that his paperwork was incorrectly or incompletely filled out. Sosnowski and Integon have provided no evidence demonstrating that Shufford knew, at any time more than two years prior to the filing of his lawsuit, that these misrepresentations were not true. A factfinder might reasonably conclude that Shufford believed that Integon had such witnesses against him or that it had not in fact received and accepted his paperwork.

Integon and Sosnowski argue that because Shufford knew that he was not guilty of vandalizing his car, he should also have known that Integon could not produce witnesses against him, nor initiate a criminal prosecution of him. Though this argument might seem logical, a reasonable juror might also find that Shufford was so intimidated and frightened by Sosnowski's representations, and so untrusting of Sosnowski's and Integon's motivations, he did believe Integon would attempt to frame him for a crime he did not commit. This issue must therefore be left for a jury to decide, and so the court rejects the argument that summary judgment should be granted on this basis.

■ Finally, the court turns to the statute of limitations for Shufford's bad faith claim. Alabama courts have held that "the bad faith refusal to pay a claim is merely a species of fraud and, as such, the statutes of limitation applicable to fraud apply." *Dumas v. Southern Guar. Ins. Co.,* 408 So.2d 86, 89 (Ala.1981). Therefore, the two-year statute of limitations for bad faith claims begins to run as soon as the plaintiff knew or should have known that the defendant acted in bad faith. *Safeco Ins. Co. of America v. Sims,* 435 So.2d 1219, 1222 (Ala.1983). For the same reasons articulated as to Shufford's fraud claim, the statute of limitations issue on his bad faith claim includes an issue of fact that should be decided by a jury.

## V. FRAUD

■ Integon and Sosnowski next argue that, even if Shufford's fraud claim is not time-barred, the court should grant summary judgment because Shufford has failed to provide evidence to support every element of the claim. In order to succeed on a claim of fraud under Alabama law, plaintiffs must provide evidence of the following four elements: "(1) a false representation, (2) concerning a material existing fact, (3) upon which the plaintiff has relied, and (4) has been damaged as a proximate result." *Taylor v. Moorman Manufacturing Co.,* 475 So.2d 1187, 1189 (Ala.1985). Integon and Sosnowski argue

that summary judgment is due because Shufford has failed to provide sufficient evidence of the third element—detrimental reliance on their misrepresentations. "It is fundamental to an action for fraud that the plaintiff must have relied to his detriment on the alleged misrepresentation. In the absence of proof of reliance, a plaintiff's fraud claim must fail as a matter of law." *Sanders v. Kirkland & Co.,* 510 So.2d 138, 142 (Ala.1987).

■ In response, Shufford provides two arguments to support the reasonable reliance element of his fraud claim. First, he contends that he relied on Integon's and Sosnowski's misrepresentations by failing to take legal action that might have resulted in quicker resolution of his claim and a larger award. Secondly, Shufford contends that he reasonably relied on the misrepresentations when he accepted Integon's settlement offer, which was for an amount less than the balance on the lien on his car and less than the actual cash value of the destroyed vehicle.

Shufford's contentions are thus analogous to those accepted by the Alabama Supreme Court in *International Rehabilitation Associates, Inc. v. Adams,* 613 So.2d 1207, 1215–16 (Ala.1992). There, the plaintiff filed suit against the provider of rehabilitation services under his workers' compensation plan for misrepresenting the kinds of services it would provide him. The plaintiff argued successfully that he relied on the defendant's misrepresentations by failing to seek other service providers, which in turn caused him injury in the way of delay. Similarly, in the case at bar, Shufford maintains that he relied on Integon's and Sosnowski's misstatements by failing to seek other avenues of expediting his claim, which caused longer delays and a less advantageous outcome for him.

The court therefore concludes that because a genuine issue of fact exists as to the reasonable reliance element of Shufford's fraud claim, summary judgment should be denied as to this claim.

## VI. BAD FAITH

■ Finally, Integon seeks summary judgment as to Shufford's claim of bad faith refusal to pay. Under Alabama law, the five elements of a successful bad faith claim are as follows: "(1) that there was 'an insurance contract between the parties'; (2) 'an intentional refusal to pay the insured's claims'; (3) 'the absence of any reasonably legitimate or arguable reason for that refusal'; (4) 'the insurer's actual knowledge of the absence of any legitimate or arguable reason'; and (4) 'if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.'" *Smith v. MBL Life Assurance Corp.,* 589 So.2d 691, 697 (Ala.1991) (quoting *National Sec. Fire & Cas. Co. v. Bowen,* 417 So.2d 179, 183 (Ala.1982)).

Integon argues that since it did not ultimately refuse to pay Shufford's claim, there was no underlying breach of contract in this case, and Shufford has therefore failed to meet the second required element of his bad faith refusal to pay claim. Thus, Integon argues, Shufford's bad faith claim fails absent a showing that Integon in fact breached its contract by refusing to pay.

■ However, Integon's argument overlooks the possibility that Shufford could make out a breach-of-contract claim without demonstrating that Integon never paid him. Not only an outright refusal to pay, but also either an unwarranted delay in payment or an insufficient payment can form the grounds for a breach-of-contract claim. The court concludes that Shufford has presented sufficient evidence that Integon breached its contract by unjustifiably delaying payment to support this element of his bad faith claim.

Shufford's case is analogous to *Livingston v. Auto Owners Ins. Co.,* 582 So.2d 1038 (Ala.1991), wherein the Alabama Supreme Court held that the defendant insurance company's unjustified delay in

paying the plaintiff's insurance claim so clearly constituted a breach of contract that it supported her claim for bad faith refusal to pay. *Livingston* arose out of a home insurance claim that the plaintiff filed after her house burned down. After the insurance company conducted an extensive investigation designed to delay the processing of her claim and to unearth evidence implicating the plaintiff in the burning of her house, the plaintiff filed a lawsuit. Subsequently, the plaintiff accepted an offer of compensation from her insurer to settle the breach-of-contract claim. As to the plaintiff's bad faith refusal to pay claim, the Alabama Supreme Court concluded, "While Auto Owners never directly denied Mrs. Livingston's claim, the evidence was such that a jury could find that its prolonged investigation after all the facts had been gathered amounted to ... a denial of the claim." *Id.* at 1042. The court further concluded that since the plaintiff provided evidence indicating that the insurer had no reasonable grounds for delaying and investigating her claim so extensively, she had satisfied the elements of a bad faith refusal to pay. *Id.* at 1043.

Similarly, the evidence Shufford has presented suggesting that Integon purposely delayed the processing of his claim without any grounds for suspecting him of burning his car, would, if proven, warrant a conclusion that Integon breached its contract with Shufford., In particular, Shufford has presented evidence that Integon launched an in-depth investigation of his claim despite the fact that his case did not, using its own checklist for making such determinations, present enough "red flags" to warrant its suspicion of insurance fraud or its taking such action. Because Shufford has thus presented evidence of breach of contract, the court concludes that summary judgment should be denied as to Shufford's bad faith claim.

## VII. CONCLUSION

For the foregoing reasons, the court concludes that the motions for summary judgment, filed by Integon and Sosnowski on July 22 and September 15, 1999, respectively, should be denied in part and granted in part, as follows. Summary judgment will be granted as to Shufford's claims of intentional infliction of emotional distress, professional negligence, negligent and wanton adjustment of claims, invasion of privacy, and false light. Summary judgment will be denied as to Shufford's breach-of-contract, fraud, and bad-faith-refusal-to-pay claims.

Accordingly, for the above reasons, it is ORDERED as follows:

(1) Defendants Integon Indemnity Corporation, Bankers and Shippers Insurance Company, the Warren Agency, and Daniel E. Sosnowski's motions for summary judgment, filed on July 22 and September 15, 1999, are granted with respect to plaintiff Christopher D. Shufford's claims of intentional infliction of emotional distress, professional negligence, negligent and wanton adjustment of claims, invasion of privacy, and false light; and

(2) Said motions are denied with respect to plaintiff Shufford's breach-of-contract, fraud, and bad-faith-refusal-to-pay claims.